UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
KEVIN MILNER, :
:
Plaintiff, :
: 15-CV-6320 (VSB)
- against - :
: **OPINION & ORDER**
:
HRA POLICE DEPARTMENT/AGENCY, :
DEXTER FREEMAN, DIANE CLARKE, :
:
Defendants. :
:
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/28/2018

Appearances:

Kevin Milner
Bronx, New York
*Pro Se Plaintiff*

Hilary Stenhouse Robinson
Justin Warren Reiter
New York City Law Department
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

  Before me is the motion of Dexter Freeman and Diane Clarke (the "Individual Defendants") and the Human Resources Administration Police Department/Agency (the "HRA," and collectively with the Individual Defendants, "Defendants") to dismiss pro se Plaintiff Kevin Milner's amended complaint. (Doc. 32.) Plaintiff alleges that he was discriminated against in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Americans with Disabilities Act, 42 U.S.C. § 12112 *et seq.* (the "ADA"). For the reasons stated below, Defendants' motion to dismiss is GRANTED.

I.     **Background**[1]

For nearly six years, Plaintiff was employed by the HRA as a Supervising Special Officer. (Am. Compl. 9–10.)[2] On July 15, 2011, he was demoted to Special Officer, despite passing the required civil service exam and receiving notifications that he would retain his position. (*Id.* at 5, 9.) Other Supervising Special Officers who had also failed the exam and had the same provisional status as Plaintiff were not demoted and were allowed to retain their positions. (*Id.* at 5.) As a result of his demotion to Special Officer, Plaintiff lost wages and was "subjected to unfair labor practices." (*Id.*)

The Individual Defendants made personal attacks against Plaintiff during his time at the HRA, contributing to a work environment of continued harassment. (*Id.* at 4.) Specifically, Freeman "made personal attacks against [Plaintiff]" and enlisted other police supervisors, including Clarke, to assist and conspire against him. (*Id.*) For example, in or about August 2010, Freeman made several attempts to have Plaintiff's co-workers fabricate negative claims against him and report back to Freeman. (*Id.* at 5.) One such co-worker, Osselito Beauburn, was falsely terminated in or about December 2010 for not complying with Freeman. (*Id.* at 5, 24–26.) Clarke also issued a number of disciplinary write-ups against Plaintiff at the instruction of Freeman. (*Id.* at 5.) She was "continuously verbally abusive" to Plaintiff, "using profanity and derogatory statements." (*Id.*)

---

[1] The following factual summary is drawn from the allegations of the amended complaint and documents attached to the amended complaint, which I assume to be true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "Am. Compl." refers to Plaintiff's amended complaint filed on July 13, 2016 and the documents attached to it ("Amended Complaint"). (Doc. 32.) Although Plaintiff styled his Amended Complaint as a "Second Amended Complaint for Employment Discrimination," it is the first amended pleading that he filed in this matter. The Amended Complaint does not contain sequential paragraphs or page numbers, so in citing to the Amended Complaint I refer to the page numbers given to the document by the Court's electronic case filing system ("ECF").

Plaintiff reported these allegations in a number of complaints to the New York State Division of Human Rights ("SDHR") in 2011. (*Id.* at 4.) In retaliation for the prior complaints with the SDHR, Plaintiff's "work environment became extremely hostile." (*Id.*) The continued harassment affected Plaintiff's health, and Plaintiff sought help from a medical professional as a result of stress. (*Id.*)

On October 8, 2014, Plaintiff requested and was granted leave under the Family and Medical Leave Act ("FMLA") so that he could undergo knee surgery. (*Id.*) At the time of his FMLA request, Plaintiff also requested "advanced leave time." (*Id.*) Although Plaintiff was granted leave under the FMLA, he was denied his request for advance leave time. (*Id.*) Plaintiff then requested special extended sick leave with pay but was denied this request as well. (*Id.* at 4, 54.) The Office of Staff Resources (the "OSR") informed Plaintiff that he did not meet the requirements of special extended sick leave with pay due to Plaintiff's prior disciplinary actions within the HRA. (*Id.* at 4.) Plaintiff alleges that these disciplinary actions were "unfounded and fabricated" by the Individual Defendants. (*Id.*)

On October 22, 2014, while on leave, Plaintiff jointly filed a complaint with the SDHR and the U.S. Equal Employment Opportunity Commission ("EEOC") (the "SDHR Complaint"), alleging that the HRA discriminated against him because of his disability of "diabetics/knee surgery." (Compl. 9.)[3] Plaintiff also alleged in the SDHR Complaint that the HRA retaliated against him for filing prior complaints with the SDHR. (*Id.*) On May 25, 2015, the EEOC adopted the SDHR's finding that there was no probable cause for Plaintiff's charges in his SDHR Complaint, and issued a right-to-sue letter. (Am. Compl. 7.)

---

[3] "Compl." refers to Plaintiff's complaint filed on August 11, 2016 and the documents attached to it (the "Complaint"). (Doc. 2.) Although Plaintiff attached his SDHR Complaint to his initial Complaint, he did not attach it to his Amended Complaint. (*See* Docs. 2, 32.) The Complaint does not contain sequential paragraph or page numbers, so in citing to the Complaint, I refer to the page numbers given to the document by ECF.

3

After Plaintiff spent one year on leave, his doctor indicated that he could not return to work due to the nature of Plaintiff's position. (*Id.* at 5.) On October 7, 2015, the HRA terminated Plaintiff's employment because Plaintiff was unable to resume his duties as Special Officer after one year of leave and the HRA does not approve medical leaves of absence over one year. (*Id.* at 6, 58.) Plaintiff was not offered any reasonable accommodation by way of a modified position or otherwise. (*Id.* at 6.)

## II. **Procedural History**

Plaintiff initiated this action with the filing of his Complaint on August 11, 2015. (Doc. 2.) On September 10, 2015, Chief Judge Loretta A. Preska granted Plaintiff's request to proceed in forma pauperis. (Doc. 3.) The case was assigned to me on September 14, 2015. (Dkt. Entry Sept. 14, 2015.) On June 3, 2016, Defendants filed a motion to dismiss Plaintiff's Complaint, (Doc. 27), and accompanying memorandum of law, (Doc. 28). By endorsement dated June 7, 2016, I notified Plaintiff that his opposition was due on or before July 18, 2016, but that he could file an amended complaint in lieu of an opposition to Defendants' motion to dismiss. (Doc. 31.)

On July 13, 2016, Plaintiff filed his Amended Complaint. (Doc. 32.) After I dismissed Defendants' motion to dismiss Plaintiff's Complaint as moot with leave to re-file, (Doc. 36), Defendants filed the instant motion to dismiss the Amended Complaint, (Doc. 37), and accompanying memorandum of law, (Doc. 38). Plaintiff filed a letter dated November 7, 2016 stating his opposition to Defendants' motion, (Doc. 40), and Defendants filed their reply on November 21, 2016, (Doc. 41).

### III. Legal Standards

#### A. *Motion to Dismiss*

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237. A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

### B. *Pro Se Litigant*

Even after *Twombly* and *Iqbal*, a "document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Further, pleadings of a pro se party should be read "to raise the strongest arguments that they suggest." *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). Nevertheless, dismissal of a pro se complaint is appropriate where a plaintiff fails to state a plausible claim supported by more than conclusory factual allegations. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). In other words, the "duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks omitted).

## IV. <u>Discussion</u>

### A. *Statute of Limitations*

In a state such as New York where there is "an entity with the authority to grant or seek relief with respect to [an] alleged unlawful practice," an employee must file an EEOC charge within 300 days of the alleged discrimination. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002); *see also Pikulin v. City Univ. of N.Y.*, 176 F.3d 598, 599 (2d Cir. 1999) (per curiam) (concluding that the 300-day limitations period applies in New York); *Francis v. Blaikie Grp.*, 372 F. Supp. 2d 741, 746 & n.7 (S.D.N.Y. 2005) (collecting cases). If the employee fails to file an EEOC charge within the 300-day limitations period, his claims based on that purportedly discriminatory act are time-barred. *See Pikulin*, 176 F.3d at 599–600. "When a plaintiff alleges violations occurring more than 300 days before filing of his complaint, he may

not recover unless those violations are part of one ongoing claim, such as a claim of harassment or hostile work environment." *Ivanov v. N.Y.C. Transit Auth.*, No. 13 Civ. 4280(PKC), 2014 WL 2600230, at *6 (S.D.N.Y. June 5, 2014) (citing *Morgan*, 536 U.S. at 110–19).

The 300-day limitations period begins to run when the employee "knew or had reason to know of the injury serving as the basis for his claim." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999). When a plaintiff alleges more than one discrete unlawful employment practice, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 113. Such "discrete" acts include termination, failure to promote, denial of a transfer, or refusal to hire. *Id.* at 114.

Equitable tolling of the 300-day limitations period applies only in "rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (citation and internal quotation marks omitted). While courts construe pro se pleadings liberally, a pro se plaintiff is not excused from the 300-day requirement. *See Washington v. Mile Square Transp., Inc.*, No. 11 CV 87 VB, 2012 WL 4054256, at *2 (S.D.N.Y. Aug. 27, 2012) ("[Title VII's] statutory deadlines are strictly construed, even against *pro se* plaintiffs."); *Lewis v. N.Y.C. Dep't of Educ.*, No. 12 Civ. 675(NRB), 2013 WL 5405534, at *5 (S.D.N.Y. Sept. 25, 2013) (dismissing as time-barred pro se plaintiff's Title VII claims).

Here, Plaintiff jointly filed his EEOC charge with his SDHR Complaint. (*See* Am. Compl. 16.) To the extent that Plaintiff alleges discriminatory acts occurring more than 300 days prior to his filing of the SDHR Complaint on October 22, 2014, such claims are time-barred. I find there are no rare and exceptional circumstances present in this case to justify equitable tolling of the 300-day limitations period. Thus, Plaintiff's Title VII and ADA claims arising out

7

of acts occurring prior to December 26, 2013 are time-barred, including his demotion from Supervising Special Officer to Special Officer in 2011 and the HRA's disciplinary actions against Plaintiff from 2009, 2011 and September 2013. Accordingly, Plaintiff's ADA or Title VII claims arising out of acts occurring prior to December 26, 2013 are dismissed as time-barred.

### B. *Title VII Claims*

A plaintiff must exhaust his administrative remedies with the EEOC or equivalent authorized agency before filing Title VII claims in federal court. 42 U.S.C. § 2000e-5(e)–(f); *see also Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) ("Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII . . . statutory scheme[] and, as such, a precondition to bringing such claims in federal court." (internal quotation marks omitted)). This requirement, however, is "merely a precondition of suit" and not a jurisdictional bar. *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015). "The purpose of this exhaustion requirement is to give the administrative agency the opportunity to investigate, mediate, and take remedial action." *Id.* (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998)); *see also Brailsford v. Zara USA, Inc.*, No. 14 Civ. 6999(LGS), 2015 WL 1608214, at *5 (S.D.N.Y. Apr. 10, 2015) (dismissing retaliation claim under Title VII for plaintiff's failure to provide the agency notice of his claim by raising it in his SDHR complaint).

Here, Plaintiff did not allege in his SDHR Complaint that he was discriminated against on the basis of race, gender, or national origin, nor did he make any allegations that he was discriminated against pursuant to Title VII. In his SDHR Complaint, he chose the two following options as a basis of discrimination: "disability" and "retaliation." (*See* Compl. 9.) He did not check the box identifying "race/color or ethnicity," "national origin," or "sex," which were three

8

plainly-marked options on SDHR Complaint. Furthermore, Plaintiff did not allege any facts that would have given the SDHR or the EEOC notice to investigate Plaintiff's race, sex, or national origin discrimination claims. In other words, any Title VII claims raised in Plaintiff's Amended Complaint are not reasonably related to the allegations contained in Plaintiff's SDHR Complaint. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 83 (2d Cir. 2001) "([A] plaintiff typically may raise in a district court complaint only those claims that either were included in or are reasonably related to the allegations contained in [his] EEOC charge." (internal quotation marks omitted)). Accordingly, Plaintiff's Title VII claims are dismissed for failure to exhaust administrative remedies.

### C. *ADA Claims*

Construing the Amended Complaint in the light most favorable to Plaintiff, as I must, Plaintiff appears to assert claims of disability discrimination, failure to accommodate, and retaliation under the ADA. (*See* Am. Compl. 1–2.)

#### 1. Individual Liability

Individuals are not subject to liability under the ADA. *See Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) ("[T]he retaliation provision of the ADA . . . cannot provide for individual liability."); *Ivanov*, 2014 WL 2600230, at *5 (stating there is no individual liability for ADA discrimination or retaliation claims and collecting cases). Accordingly, Plaintiff's ADA claims are dismissed as to the Individual Defendants.[4]

---

[4] Plaintiff's Title VII claims are dismissed in their entirety for failure to exhaust administrative remedies, (*see supra* Part IV.A), but I note that Plaintiff's Title VII claims would also fail against the Individual Defendants, as individuals are not subject to liability under Title VII either. *See, e.g.*, *Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012) ("Employers, not individuals, are liable under Title VII.").

9

### 2. Exhaustion of Administrative Remedies

ADA claims are subject to the same administrative exhaustion requirements as Title VII claims. *See Brailsford*, 2015 WL 1608214, at *6 (citing *Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 325 (2d Cir. 1999)); *Hodges v. Holder*, 547 F. App'x 6, 7 (2d Cir. 2013) (summary order) ("[A] plaintiff bringing claims under the ADA . . . must exhaust certain administrative remedies before initiating suit in the district court."). Plaintiff did not include a discrimination claim based on his termination in his SDHR Complaint. Plaintiff raises this claim for the first time in his Amended Complaint, and thus did not provide to the EEOC a basis to investigate any claim arising out of the HRA's decision to terminate Plaintiff's employment. Accordingly, Plaintiff's ADA claims based on the HRA's termination of Plaintiff's employment are dismissed for failure to exhaust administrative remedies.

### 3. Disability Discrimination

The ADA prohibits discrimination against a "qualified individual on the basis of disability" in the "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate that: "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability or perceived disability." *Kinneary v. City of New York*, 601 F.3d 151, 155–56 (2d Cir. 2010) (quoting *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005)). The fourth element requires that—at the pleading stage—Plaintiff must at least plausibility allege that (1) his employer took adverse action against him and (2) the action was taken because of his disability or perceived disability. *See Giordano*

*v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001); *see also Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223–24 (2d Cir. 2001) (stating that the fourth prong requires a "causal connection between [the] protected activity and the adverse employment action").

Here, Plaintiff has not alleged any facts to suggest that an adverse employment action was taken against him because of his disability. The only allegations in Plaintiff's Amended Complaint that could be construed as adverse employment actions are the HRA's decisions to deny him advanced leave and special extended sick leave with pay. (*See* Am. Compl. 4.) Even assuming that these denials are adverse employment actions, Plaintiff fails to allege that he suffered these actions because of his disability or perceived disability. *See Kinneary*, 601 F.3d at 156; *Giordano*, 274 F.3d at 747. Instead, Plaintiff alleges that the HRA denied him advanced leave and special extended sick leave with pay because of "prior disciplinary actions" with the HRA, which were "unfounded and fabricated by Mr. Freeman and Ms. Clarke." (Am. Compl. 4.) He does not allege that these prior disciplinary actions were in any way connected to his diabetes or his knee surgery. Accordingly, Plaintiff's disability discrimination claim under the ADA is dismissed.

### 4. Failure to Accommodate

The ADA also requires employers to provide reasonable accommodations to employees with known disabilities, unless doing so would pose an undue hardship to the employer. 42 U.S.C. § 12112(b)(5)(A). To state a claim for failure to accommodate, a plaintiff must allege that: "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McMillan v. City of New York*, 711 F.3d 120, 125–26 (2d Cir.

2013) (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)).

Thus, a plaintiff must allege that his employer had "an opportunity to accommodate [him]." *Taylor v. Harbour Pointe Homeowners Ass'n*, 690 F.3d 44, 49 (2d Cir. 2012) (noting that "defendants must have had an idea of what accommodation [plaintiff] sought prior to their incurring liability for failing affirmatively to grant a reasonable accommodation").

Here, Plaintiff fails to allege that the HRA refused to make a reasonable accommodation. Plaintiff alleges, without more, that he was "not offered any reasonable accommodation." (Am. Compl. 6.) He does not allege that he ever requested a reasonable accommodation, or that the HRA had notice of his disability. Plaintiff thus cannot show that the HRA had an opportunity to accommodate him. *See Taylor*, 690 F.3d at 49. Accordingly, Plaintiff's failure to accommodate claim under the ADA is dismissed.

### 5. Retaliation

To state a claim for retaliation under the ADA, "the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) because he has opposed any unlawful employment practice." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (internal quotation marks omitted). In other words, a plaintiff must show that "'(1) [he] engaged in an activity protected by the [ADA]; (2) the employer was aware of this activity; (3) the employer took an adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity,' that is, the employer acted with a retaliatory motive." *Quadir v. N.Y. State Dep't of Labor*, 39 F. Supp. 3d 528, 542 (S.D.N.Y. 2014) (quoting *Caskey v. Cty. of Ontario*, 560 F. App'x 57, 58 (2d Cir. 2014) (summary order)). The anti-retaliation provisions in Title VII and the ADA are nearly identical and analyzed under the same framework. *See Shih v. JPMorgan Chase Bank, N.A.*, No.

12

10 Civ. 9020(JGK), 2013 WL 842716, at *5 (S.D.N.Y. Mar. 7, 2013) ("The anti-retaliation provisions in Title VII, the ADEA, the ADA, and the NYSHRL contain nearly identical language and are analyzed under the same framework.").

An adverse employment action in the context of a retaliation claim "covers a broader range of conduct" and "is not limited to discriminatory actions that affect the terms and conditions of employment." *Vega*, 801 F.3d at 90 (internal quotation marks omitted). However, a plaintiff must plausibly plead "a connection between the act and his engagement in protected activity." *Id.* "A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." *Id.* However, to establish a causal connection on the basis of temporal proximity, the adverse action must be "very close" in time to the protected activity. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

Here, Plaintiff's allegations do not support a claim of retaliation under the ADA. The only allegations in Plaintiff's Amended Complaint that could be construed as adverse employment actions are again the HRA's decisions to deny him advanced leave and special extended sick leave with pay. (*See* Am. Compl. 4.) Even assuming that these denials are adverse employment actions in the broader context of a retaliation claim, Plaintiff fails to allege a connection between the denials and his engagement in protected activity. *See Vega*, 801 F.3d at 90. As described above, plaintiff alleges that the HRA denied him advanced leave and special extended sick leave with pay because of "prior disciplinary actions" with the HRA, which were "unfounded and fabricated by Mr. Freeman and Ms. Clarke." (Am. Compl. 4.) Plaintiff further alleges that these unfounded and fabricated disciplinary actions were the subject of his prior complaints to the SDHR. However, Plaintiff's only prior complaint to the SDHR that even mentions disability was filed in 2011. The passage of more than three years between Plaintiff's

13

prior disability-related complaint to the SDHR and the HRA's denial of Plaintiff's requests for leave vitiates any causal connection based upon mere temporal proximity. *See Breeden*, 532 U.S. at 273. Accordingly, Plaintiff's retaliation claim under the ADA is dismissed.[5]

### D. *Hostile Work Environment Claim*

To the extent Plaintiff has alleged a hostile work environment claim, Defendants argue that Plaintiff fails to state a claim. (Defs.' Mem. 17–18.) Specifically, Defendants assert that Plaintiff makes only conclusory statements in alleging that he was harassed by the HRA, and he does not allege that he was harassed because of his disability. I agree.

As an initial matter, the Second Circuit "[has] not yet decided whether hostile-work-environment claims are cognizable under the ADA." *Dollinger v. New York State Ins. Fund*, No. 16-4068-cv, 2018 WL 832904, at *3 (2d Cir. Feb. 13, 2018) (summary order). However, courts in this Circuit have recognized ADA hostile work environment claims, evaluating them under the standard governing such claims under Title VII. *See, e.g.*, *Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 973 F. Supp. 2d 386, 405–06 (S.D.N.Y. 2013), *aff'd*, 586 F. App'x 739 (2d Cir. 2014) (summary order); *Tse v. N.Y. Univ.*, No. 10 Civ. 7207(DAB), 2013 WL 5288848, at *13 n.13 (S.D.N.Y. Sept. 19, 2013). I assume, without deciding, that such a claim is cognizable under the ADA.

To state a claim for hostile work environment, "a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an

---

[5] Retaliation claims under Title VII are evaluated under the same standard as retaliation claims under the ADA. *See, e.g.*, *Shih*, 2013 WL 842716, at *5. Plaintiff's Title VII claims are dismissed in their entirety for failure to exhaust administrative remedies, (*see supra* Part IV.A), but I note that Plaintiff's retaliation claim would also fail under Title VII for the same reasons that Plaintiff's retaliation claim fails under the ADA.

14

environment because of the plaintiff's [protected characteristic]." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks omitted). Thus, "a work environment will be considered hostile if a reasonable person would have found it to be so and if the plaintiff subjectively so perceived it." *Drew v. Plaza Constr. Corp.*, 688 F. Supp. 2d 270, 279 (S.D.N.Y. 2010) (quoting *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999)). This two-part inquiry is necessarily fact-intensive, and the Second Circuit has "repeatedly cautioned against setting the bar too high" in the context of a motion to dismiss a hostile work environment claim. *Patane*, 508 F.3d at 113 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)).

Here, Plaintiff's allegations concerning hostile work environment are for the most part conclusory and not related to disability or to any other protected characteristic. (*See, e.g.*, Am. Compl. 4 ("[T]he work environment became extremely hostile, discriminatory and filled with continued harassment."); *id.* at 6 ("Due to the continued attacks, harassment, threats of termination, and discriminatory acts against me while working at the HRA[,] I was extremely stressed.").) Plaintiff's non-conclusory allegations are almost entirely generalized statements with respect to Clarke and Freeman without specific examples and/or application to Plaintiff. (*See, e.g.*, *id.* at 5 (stating that Clarke was "continuously verbally abusive, using profanity and derogatory statements" but without noting any examples of such behavior); *id.* (stating that Clarke "demonstrated the need to exert her power with regard to me and was extremely unprofessional" but without noting any examples of such behavior).) Otherwise, Plaintiff alleges that Freeman attempted to have Plaintiff's subordinates fabricate negative claims against him, (*id.* at 5, 24–26); Plaintiff was issued numerous disciplinary write-ups, (*id.* at 5); and Plaintiff was denied advance leave time and special extended sick leave with pay, (*id.*). These actions are simply insufficient to raise a plausible claim for a severe or pervasive hostile work environment.

*See, e.g.*, *Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015) (dismissing hostile work environment claim where employer made negative statements about the plaintiff, was impatient and used harsh tones with the plaintiff, required the plaintiff to recreate work, wrongfully reprimanded the plaintiff, increased the plaintiff's schedule, and was sarcastic to the plaintiff, could not support a finding of a severe or pervasive hostile work environment); *Trachtenberg v. Dep't of Educ.*, 937 F. Supp. 2d 460, 472–73 (S.D.N.Y. 2013) (dismissing hostile work environment claim where plaintiff alleged that, on account of her age, she was subjected to excessive scrutiny, negative performance evaluations, a lack of training opportunities, and a poorly ventilated office).

Moreover, Plaintiff has not alleged facts to support a plausible claim that any hostile behavior at work occurred because of discriminatory reasons. "[I]t is 'axiomatic that mistreatment at work, whether through subjection to a hostile environment or through other means, is actionable . . . only when it occurs because of an employee's protected characteristic,' such as race or gender." *Lloyd v. Holder*, No. 11 Civ. 3154(AT), 2013 WL 6667531, at *11 (S.D.N.Y. Dec. 17, 2013) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)); *see also Rogers v. Fashion Inst. of Tech.*, No. 14 Civ. 6420 (AT), 2016 WL 889590, at *8 (S.D.N.Y. Feb. 26, 2016) ("Plaintiff must plausibly allege a basis to infer that Defendants took these unfavorable actions against him because of his [protected characteristic]."). In the Amended Complaint, Plaintiff does not connect any of the treatment contributing to his alleged hostile work environment to his disability or to any other protected characteristic. Accordingly, Plaintiff's hostile work environment claim is dismissed.

## V. Conclusion

For the reasons stated above, it is hereby ordered that Defendants' motion to dismiss is GRANTED, and Plaintiff's claims are dismissed. Based upon the allegations in the Amended Complaint and the relevant case law discussed above, I find that any attempt by Plaintiff to further amend his complaint would be futile. Therefore, Plaintiff's claims are dismissed with prejudice.

The Clerk of Court is respectfully directed to enter judgment for Defendants, mail a copy of this Opinion and Order and the judgment to the pro se Plaintiff, and close this case.

SO ORDERED.

Dated: March 28, 2018
 New York, New York

Vernon S. Broderick
United States District Judge